on behalf of the petitioner, Joshua Tubalado. Your Honors, I submitted a citation to the court on the Cuevas-Garcia-Gonzalez matter previously, and I do believe that this case is dispositive on the main issue here before us, and that's whether the continuous residency of a parent may be imputed to an unemancipated minor. The Cuevas-Garcia court indicated that it could be in the context of cancellation of removal, and Mr. Tubalado, the petitioner, qualifies in all other aspects. He was a lawful permanent resident for five years. But his father was not – didn't have seven years continuous residence. His father, I believe, had more than seven years, Your Honor. No. He had those three years in Japan. That's correct. But I believe that I've also cited Section 240d.3, which allows a military serviceman to be exempt from continuous residency. Right. But your client is not a military serviceman. No, Your Honor. Why does he get the benefit of the law? Well, in the context of a judicial interpretation which recognizes imputing residency and status for children, I believe that the residency of the father, which is exempted, can also be imputed to the child. That would be an extension of Cuevas, right? I don't believe so, Your Honor. Cuevas didn't even involve a serviceman. No, it didn't, Your Honor. Of course it didn't. What Cuevas involved was a minor who'd been living with his mother. And the mother had come in 1990. So they tacked her residency to his residency because the policy of the Immigration Act ever since 1965 has been a reunification of families. That's correct. But this case involves a privilege which is given to a serviceman, two years instead of seven, if he does two years in the service. Your client was never in the service. Well, I also believe, though, Your Honor, that imputation is not merely curative in the sense that in the Cuevas-Garcia and Lepid-Buitron, we had an issue there where the residency was cut off because of the institutional proceedings or the commission of the offense. I believe that imputing means the definition of what it says. We ascribe that from one party to the other. So Mr. Trubelato, the senior Trubelato, had more than seven years of continuous residency in the United States. Yes, it had been cut off once he was stationed abroad. But he'd been a resident since 1983. And I cite the proposition from the case of Rosario, which was cited in my reads. And again, that case was ---- I'm sorry. Am I understanding you to say that even without the special rule for servicemen, the father had seven years continuous residency? Yes, Your Honor. And that was established? What would those years be? From 1983, Your Honor. He was a lawful permanent resident from 1983. Until when?  He was a U.S. citizen in 1994. And aside from tours abroad ---- When did he leave for Japan? It was in 1995, I believe, when he began to reside in Japan with his son there. But in the context of ---- When did the son become a lawful permanent resident? 1997, Your Honor. All right, 1997. But I would submit that ---- So by the time he became a lawful permanent resident, the father was living in Japan, not the United States. They flew from Japan to Guam and then flew back. Yes, that's correct, Your Honor. In 83, the father was admitted as a permanent resident? That's correct, Your Honor. In 83? Yes.  That's correct, Your Honor. Also in his declaration, you can see that he had various stints abroad. He was on a naval vessel, I believe, for some period of time that went out to sea for some periods of time. So he was not actually physically in the United States even from the time that he entered until he went to Japan. So he may have been taken on board a ship a few times. This was in the service? This was in the employ of the United States Navy, Your Honor. Before he went to Japan? That's correct. He joined the service shortly after he became a lawful permanent resident. But I think ---- Why does your client get knocked out anyway because he committed an aggravated felony? Your Honor, this ---- he was never charged with being an aggravated felon. This issue was never litigated in the immigration court. The BIA indicates that it did not make a ruling on this. My contention is that the Judge Suis Ponte found him to be an aggravated felon and merely misread the sentencing document. He was ordered to probation. He did not have a term of more than one year. And the document is clear there. The sentence itself was suspended. The imposition of the sentence was suspended with a condition of probation. But he pleaded guilty to 245A, which is assault with a deadly weapon. Yes, Your Honor. That is a felony. Yes, that's correct. But he was not sentenced to a term of more than a year. He was sentenced to a term of less than a year. What controls the actual sentence or the possible sentence? The actual sentence in this context, Your Honor, for aggravated felony. And I think it speaks volumes that no one from the government has ever contested this. He was given three years probation and as a condition of the suspension of imposition of sentence, nine months in the county jail. That's correct, Your Honor. Right. But he was convicted of a felony, which was assault with a deadly weapon. I will concede that he was. Yes, he was. Okay, I will just save the rest of your time for rebuttal. Thank you, Your Honor. Okay, we'll hear from the government. Good morning, Your Honors. My name is Zong Park for the Attorney General, Michael Mukasey. May it please the Court. Under 8 U.S.C. 1229b, subsection a, the language specifically provides that the eligibility requirements for cancellation of removal for certain permanent residents require, among other requirements, that the applicant must have resided in the United States continuously for seven years before being admitted, after being admitted in any status. And here, the Petitioner cannot meet that requirement because by his own admission, he didn't enter into the United States as an LPR, a lawful permanent resident, until I believe it was 1997. And his commission of the aggravated felony that Your Honors just addressed occurred in 2001, which rendered the accrual of the continuous residence period. So, therefore, he didn't have he would he is unable to meet the seven years presence  What about Cuevas? Your Honor, that case actually does not assist the Petitioner here because the Petitioner here isn't just simply requesting an imputation of his parents' continuous residence to himself, but, in fact, is asking two things. One, that even though he himself has never been physically actually present in the United States for seven years, is asking that the Court create a legal fiction so that he actually has those additional three years that he is missing. And in addition to that, Cuevas didn't address the subsection D3 service, armed services exception. And what he's asking the Court to do here in this case is not only that the imputation doctrine be applied when he himself has not, in fact, been present for seven years in any status in the United States, but that he is requesting an exception, to the serviceman exception, by having that apply in his case. In Cuevas, the Petitioner in that case was present physically and actually, in fact, in the United States for the requisite seven-year period of seven years. It's just that he the period of seven years was not for the full he was not an LPR, a lawful permanent resident during the entirety of that seven-year period. But he was here present in the United States, as was his parent from whom he was deriving or imputing the residence. In this case, it's a completely different set of facts, because here Petitioner was not, has not been here in any status, legal or illegal, for the requisite seven-year presence. And he's asking that the Court create this legal fiction to tack on those extra years. So the government's position is that Cuevas does not assist Petitioner in this matter, because — Even if you tack on two years, that doesn't do it. Because if you go from 97 to 2004, that's four years. You tack on two years, that's six years. It doesn't make seven. Or even if he were requesting the Court to tack on three years to make up the seven years. Well, why don't we tack on 15 years? That's exactly, exactly, Your Honor. If you apply Cuevas so broadly as to allow the imputation rule, where the Petitioner himself has not physically actually been present in the United States for that amount of time. I mean, as Your Honor has noted, you can tack on 15 years, you can tack on three years, you can tack on 10 years. It would be completely arbitrary. Why doesn't the logic of Cuevas say that we can use any seven-year period in the parent's residence in this country? And he says that a parent was resident here, his father was resident as an LPR from 1983 until, oh well, I mean, continuously, except for when he was in Japan, until he became a citizen, right? Yes, I believe he became a citizen in 1994. The record... So why doesn't the logic of Cuevas say you can pick any seven-year period in the parent's continuous residence and just simply give it to the child, attribute it to the child? Again, I think the distinguishing factor from Cuevas is that in that case, both the Petitioner as well as the parent from whom the imputation was being claimed had been physically present in the United States. However, in this case, he simply, the Petitioner here has not himself physically been present for the requisite amount of time. And in order to extend Cuevas... I'm sorry. So you read Cuevas as only attributing LPR status, lawful admission? Correct, Your Honor. Not continuous residence. So the Petitioner has to have a continuous residence on his own, but the lawfulness of Is that what you're saying? I think what I'm saying is that the continuous residence, which is the period of time that was imputed in Cuevas, the Court was both in Lepe-Guitron, the case preceding Cuevas, as well as the subsequent cases that the Board has also spoken on. All of those cases indicate that in each of those cases, the Petitioner himself was present personally and physically in the United States, and that's, and the Court basically allowed the imputation rule to apply by recategorizing, if you will, the amount of time that he had been present in whatever status or illegal status in the United States in order to be able to derive his seven years of continuous residence. The problem here is that because... I think that was a very long yes. Yes. But I didn't actually understand what you said. It was really convoluted. You should try to listen to it on tape and see if you understand what you said, because you lost me a long ways back. Okay. The answer... Did you understand my question? Yes. The simple answer is yes. Here... Is that a plausible view of Cuevas? That's not what they said. Well, I think what the Cuevas Court held, if I misspoke, I apologize, Your Honor. Basically, the Cuevas Court... You couldn't have misspoken much when you said yes. I mean, it's either yes or no. I mean, did you misspeak that part? Perhaps I did, Your Honor. Was it part of yes that was misspoken? I think perhaps I did, Your Honor. Okay. Did you want to say no, then? If I can... Do you remember the question? If you could rephrase the question, Your Honor. Do you remember the question? If you could rephrase it, Your Honor, now. You don't remember the question. It's very dangerous to say yes when you don't remember the question. Well, I just want to make sure, Your Honor. People get into trouble that way. I know, Your Honor. I just want to make clear that I understood Your Honor's question clearly before I then I give a definitive answer on behalf of the government. If Your Honor's question was that did the Cuevas Court apply the imputation rule to the seven the five years LPR status requirement or to the seven years of continuous residence requirement, my answer would be that the Cuevas Court held the imputation rule in that case to the seven years residence continuous residence requirement. Not the LPR requirement. That's correct, Your Honor. Okay, so in that case, why can't if that's what they did, then why doesn't this petitioner get the seven years that his father was here and why doesn't it get imputed to him? Because what the petitioner is attempting to impute is not simply the seven years of physical residence from his father, Your Honor. He's trying to ask the court to not simply recategorize seven years of his own physical presence while he was here in the United States to count toward the seven years residence. He's actually asking the court to come up with three additional years, during which time he was not. That's what imputation means. That's true, Your Honor. Imputation means you don't have it, but we act like you do. It gets imputed. That's why you get it imputed. So how is that different from Cuevas? I truly don't understand your position. Well, I think in addition to that difference, also here the ---- I don't understand that difference. So whatever that difference is, this is not an addition. This is a new effort to try to ---- Well, I think I would like to point out to the court that, yes, the petitioner in Cuevas, in this case, his father attained LPR status in 1983. So he's been in LPR. And he does have ---- you don't dispute that he then had seven years or more continuous residence, the father. I don't think so. I don't think so, Your Honor, although it is not 100 percent clear from the record. You don't think he had the residence, or you don't think you dispute it? Which one? We ---- I don't believe that we dispute that, Your Honor. I think the record is not necessarily clear as to whether where his father was stationed between 1983 prior to his getting to Japan. Did the BIA have the benefit of Cuevas? No, it did not, Your Honor. Why isn't the safest thing to do here is to send it back and have the BIA apply Cuevas? And certainly if the Court could do so, because the Cuevas decision came out several years after this, I believe a year, actually. Do you hear my question? Yes. Yes, Your Honor. And certainly the Court could, and it would benefit the Court to have the board, who is the expert agency, to speak on this issue in the first instance. But I think ---- So it's the position of your service that we should remand and allow the BIA to reconsider this case based on Cuevas? No, Your Honor. The government's position is that Cuevas does not apply in this case. But if we were to court ---- if the Court were to find that ---- Well, but here's a very simple question. I asked you straight out, does he have seven years of ---- does the father have seven years of continuous residence? And you have no idea. You say, well, I don't think we dispute it. I'm not sure. Are you supposed to be the lawyer of the government? I mean, it's not a huge record. I would expect that you prepared it. If you just read it on the plane over here, you probably know it. The reality is that we don't know because nobody had any reason to think about it because they didn't have Cuevas. So nobody focused on whether the father did or didn't have seven years continuous residence. And most of you can guess. I mean, counsel tells us he did. You are not sure. There would have been no reason whatsoever before Cuevas for anybody to put in evidence on that point, for the government to dispute that evidence, right? That's correct. So Cuevas opens up a whole new set of issues that the agency did not have an opportunity to consider. That's correct, Your Honor. So that might be one reason why I would send it back to say, well, you know, here are these questions that we can't ---- that the record is just not clear on. Is there something about Cuevas that makes it ---- that makes opposing counsel's argument out of the question? Is the father, in fact, had seven years of solid continuous residence after gaining LPR standards? Is there anything about Cuevas that says that the kid doesn't get the benefit, doesn't get that attributed to him? Again, I think the distinguishing factor from Cuevas is the factual distinction, that in this case, the petitioner himself has not physically been present in the United States. What is it in the Cuevas opinion that you point to that makes that? You know, remember, that was the question that I asked you that you gave me that really convoluted answer that neither of us remembers what you actually said, or at least I didn't understand what you actually said. But remember, I asked you this question. I said, does Cuevas apply to the seven-year requirement, or does it apply to the LPR status? Are you taking the position that all they're doing is imputing LPR status to what is otherwise a seven-year continuous residence requirement? You gave me a really long answer, which I – and then I'm not sure you know what the answer to that question is. If I didn't clarify enough before, then the position is that Cuevas applies. The imputation rule in Cuevas applies with respect to the seven years of the continuous residence requirement, which I believe is subsection A2. Well, if that is the case, if it's not the LPR status – see, I can understand you saying, look, you have to have continuous residence of your own. Cuevas says, however, that it has to be seven years after lawful admission. So when you're looking at a child, we will treat the parent's lawful admission as attributable to the child, but the child has to make seven years on – has to have the seven years continuous on his own. I understand that position, but you are telling me now that's not the case. You have to apply to the seven-year requirement. And if you – if the imputation is to the seven-year requirement, then the parent has seven years, has more than seven years. Why can't we take the seven years between 1983 and 1990 and attribute it to – I mean, let's say this had been the dad. Let's say the father, before he got his citizenship, had committed exactly this crime. Okay? Right? I mean, let's say he hadn't gotten his citizenship and he had committed exactly this crime. Would he have been eligible for waiver? His – the father? The father. If he – how much time had passed when he committed the crime since he became an adult? Right before he got his citizenship. We're not talking 1994. Okay. I think in that case, he probably could apply for the waiver. But again, putting aside whether the aggravated felony is a separate basis for barring him from being able to adjust. Yes, I understand. I mean, I'm trying to keep everything the same except substitute the father for the son. So if you take – He wouldn't be attempting to impute anything in that case. He would be relying on his own presence, both with respect to father and son. No, no. That's right. And that's why we have Cuevas. Cuevas says the father doesn't need imputation because he's got the years on his own. Cuevas says we impute it to the son. Right. So if the father could have made it, even if we exclude the years in Japan, he would have made it, right? The father. Yes. I believe so, Your Honor. But I do want to point out that the – also a difference with Cuevas is that that case, I believe, spoke directly to – in that case, the Petitioner was asking about the A-2 seven-year continuous residence requirement. The Cuevas court didn't really directly speak as to what happens with the imputation rule with respect to the five years of the LPR status. And subsequent to Cuevas also being published, the Board itself has come out with a published decision expressly rejecting the application of the imputation rule to the A-1 five-year LPR status requirement, which, subsequent to the Board's decision, then was affirmed by the Third Circuit. The Third Circuit has held that that was a perfectly permissible reading of the – of the – perfectly reasonable interpretation by the Board. So Cuevas – When did the Petitioner here gain lawful permanent residence status? Was it – 1997. And when did he commit the crime? 2001. One year short. He was – correct, Your Honor. He was one year short. Has any court interpreted the Armed Forces exemption? No, Your Honor. So this is brand new in this Court and in the United States? Correct, Your Honor. And, in fact, I do not believe the Board has spoken on this issue either. If we remand for a reconsideration in view of Cuevas-Gaspar, would it not be appropriate to apply the same reasoning used by this Court emphasizing the family ties to the Armed Forces exemption? I'm sorry. If you could repeat your question, Your Honor. What is your position on – first of all, on the Armed Forces exemption? You say it doesn't apply. Correct, Your Honor. We do not – And I suppose you're saying it doesn't apply because the plain language of the statute doesn't mention children, but only servicemen. That is correct, Your Honor. Okay. But when you look at Cuevas, the statute there did not mention children. That's right. And yet there was an interpretation by this Court saying when you consider the strong family ties which are inherent in our whole immigration policy, that is not relevant, and we will – we made the decision that we did. Now, what I'm getting at, there has to be some intelligent discussion in the Board of Immigration Appeals in the Armed Forces exemption. We just had, what, one sentence in the opinion? Yes. Okay. Well, what's your position on that? Do you think that's – that's adequate to discuss an issue of first impression in the United States? I think the Board – the Board, again, as Your Honor has noted, no court or the Board in a precedent decision has spoken on that issue. So if the court wanted to give the Board the first opportunity to speak on the issue in light of all of this development since this case had been briefed, I think that would be appropriate in this case. Do you at least concede that Cuevas may have some influence on interpreting the Armed Forces exemption? May have. It certainly may, but I believe the government's position is that the service – armed services exception does not flow – the extension of the amputation rule from Cuevas does not flow to the armed services exception. Because, again, as Your Honor has previously noted, that exception, unlike Cuevas, where the court was simply interpreting one of the requirements under 8A1 that – for the eligibility for cancellation of removal, this is now asking the court to extend the Cuevas holding to an exception. Will you at least concede that in Cuevas, we did not – we did not have a specific word in the statute referring to children, yet we held that the children had the right. That's correct, Your Honor. Will you concede that if that applied to that statute, it should at least be considered in this statute? No, Your Honor. Okay. Because in the Cuevas analysis, the court noted that this new provision, the subprovision 8A1 that was being considered in the Cuevas court, was a natural extension or a sort of a rephrasing of the 212C language that had previously been disenacted by the court. So therefore, the policy reasons that may have surrounded 212C, the court found to be in the Cuevas set of facts. But that's a whole separate issue from the service – armed services exception, which Congress carved out an exception for servicemen for a whole separate different set of policy reasons than merely – than those relating to the 212C. It's highly debatable. You could say servicemen care about their families. And so if we're going to give this benefit, you know, if servicemen are required to be stationed abroad, even though they're not citizens, but they're stationed abroad, we're not going to – you know, we're going to give them this benefit. It doesn't do them any good if their children get deported. So we – you know, we get a – so this is a bit of a policy issue that could cut either way.  When did Petitioner cease being a minor? I think that was – I don't have an exact date for you, Your Honor. But I believe it was in the past three to four years. You mean after he committed the crime? I believe so, yes, Your Honor. So he was a minor at the time?  You know, I don't want to misspeak, Your Honor. To be perfectly honest, I'm not sure how old he actually was at the time. I think saying, I don't know, is close to the truth. Yes, Your Honor. Right? I mean, you have no idea. No idea. It's always best to say you don't know than to try to give a – it's the same as saying yes to questions you don't understand or don't remember. It's always a dangerous thing to do. Let me ask you something else. You understand there's another argument that has nothing to do with the exemption for the armed services exemption, because Petitioner's father has seven years independent of the fact that he's a serviceman, at least as an argument. I'm sorry. I'm not sure that I understand what you're – Well, according to counsel, he has seven years even before he ever went to Japan. That's what counsel – yes, Your Honor. But again, as Your Honors noted previously, that wasn't an issue. That was not a question. That was an issue before the agency, so that particular factual finding was never determined. All right. But the other – with respect to the serviceman exemption also, Your Honor, I would like to point out that that – the language of the serviceman exception specifically reads the alien, referring to the person who – the actual serviceman, the person who actually was serving in the United States Navy in this case. And I think to stretch the imputation rule such that it also then includes that exception, I think would be asking the – would be basically abrogating the application of that or applying the – you would both be – you would no longer be applying it just to the alien himself, but you're actually asking that those facts be read as the alien and the alien's offspring. Your Laws have argued in Cuevas. As Judge Aldershot pointed out to you, there wasn't much statutory language there. And we said, well, you look at the spirit of immigration laws and the unification, so that argument doesn't cut much ice. But I think we understand the government's position, at least as well as you do. So thank you. I promise. I don't remember if you had any time left for Petitioner. Did you have anything to add? Yes, sir. Your Honor, counsel keeps indicating that including imputation through residency when the – when the minor is outside the country was a legal fiction, and it is not a legal fiction. It's law. I kept trying to cite to Your Honor the case of Rosario that was very favorably looked upon by the original Lepi-Guton case, and it's cited in footnote 7 of Cuevas – of the Cuevas case. And in that case, it's clear that imputation can occur even when the minor is outside the country.  Thank you, Your Honor. Counsel, I have a couple questions to ask you. You heard the inquiries by the chief judge of your friend. If we decide that Cuevas satisfies the seven years – seven-year requirement, do we have to meet the armed services exemption? No, I don't think we even have to reach that issue, Your Honor. So that – okay. Thank you. Okay. Thank you, counsel. Case of Rosario will stand submitted. We will next hear argument in Cassad v. Mukasey.
judges: Kozinski, Aldisert , Bea